LOTTINGER, Judge.
This is a compensation suit wherein the plaintiff seeks benefits for total permanent disability, less and except the sum of $1,-190.00 representing compensation payments made from the date of the accident on January 11, 1961, through September 13, 1961. The nature of plaintiff’s work, the occurrence of the accident, and his rate of pay are all admitted, leaving for determination only the question of whether he suffers severe and excruciating pain in the lower area of his back, pain and numbness in the left leg and thigh and general limitation of flex-ion of the entire back area, as alleged, rendering him totally and permanently disabled. The Lower Court ruled adversely to the plaintiff and he has appealed.
Four doctors examined the plaintiff. Dr. Francis McMains, testifying on behalf of the plaintiff, was of the opinion that he “probably” had a disc injury, but that he *291 could not be 80% sure until a myelogram was conducted and could not be 100% sure until surgery, if the myelogram so indicated. A myelogram test was refused by the plaintiff.
Dr. J. M. Edelman, Neurosurgeon, testifying on behalf of defendant, stated that after an extensive series of tests conducted on May 1, 1962, he found that the patient “had a very good range of motion in his back and that he had no neurological abnormalities that I thought were of any significance in his lower extremities, and I cannot find any reason for his continuing complaints following what I thought and what seemed to be a comparatively minor injury in January of 1961.” It was this doctor’s opinion that the plaintiff suffered no disability at the time of his examination.
Dr. Joseph Sabatier, general surgeon, who treated plaintiff periodically from January 13, 1961, to August 2, 1961, testified that in his opinion plaintiff had originally suffered an acute low back strain, but that by August 2, 1961, his continued complaints were not due to the original injury, but were due to “either anxiety or outright malingering”.
Dr. Moss Bannerman, Orthopedic Surgeon, who treated plaintiff from February 8, 1961, to May 1, 1961, testified that he recommended a myelogram test and found on August 17, 1961, that plaintiff’s complaints were “not localized in their consistency” and concluded that his lumbo-sacral strain was healed.
The plaintiff described his condition as follows:
“Q. Are you able to engage in any prolonged activity and, if so, how long and, if not, why not ?
“A. In any prolonged activity the pain if it is a movement of the back becomes so severe that I just have to discontinue. If it is back movements there is very little that I can do.
“Q. Do you have the pain more on reclining or sitting down or standing up?
“A. Well, in the movement of the back in the sitting position I lose my balance at a certain angle and in the standing position I am not able to stand erect because when I go to straighten all the way full back the pain is severe, which leaves me stooped forward.
“Q. In what other ways does that pain in that back manifest itself, Mr. Bankston?
“A. In bed at night it begins to hurt under certain positions, I don’t know why, but it becomes .severe and I have to try to get up and move around and hunt some position for the relief of it and in the event I put my back against something, like this wall, it hurts just like — well, I don’t know, it is like a boil or something would hurt or your belt hurts where it rubs that one particular area.
“Q. Are you able to sit down for any length of time, and, if not, why not?
“A. If I stay in one position any length of time this leg becomes, left leg becomes numb and which I don’t have any use of until I can rub it and get it to where that I can drag it and start using it again. It required a period of time.
“Q. Have you ever encountered any difficulty on arising from a sitting position or a laying position and, if so, what type of difficulty have you encountered?
“A. In arising from a laying position I have found myself without the necessary strength in the back area to raise the weight of my body several times and in so doing *292 the pain becomes acute until I can turn and move in some manner to get to where I can use my muscles in my arms instead of my back to get to a rising position.
“Q. Now, you mentioned numbness of the leg, Mr. Bankston, How does that numbness manifest itself ? Is that a pain or a numbness or just what is your feeling?
“A. Well, this numbness through the leg and in the instep area and after a certain length of time the numbness sets up and I lose the use of my knees as far as balance toward controlling that leg for balance, it just don’t manipulate right.”
“Q. I notice you have difficulty in getting in and out of the chairs. Why is that ?
“A. Well, on several occasions if a chair happens to he a slight bit lower than one position I have no way of stopping it and I fall. I have no control of it when my back gets to a certain limitation in coming down. I have to make sure I have got my hands at rest to take care of any difference in elevation there because when I get to that point I have got to lower my body weight with my hands, is the reason that — and the pain when it sets up and I come down on it it just takes the entire strength of my body and it just collapses.
“Q. Well, where you are sitting now you have got a pretty good place to put your hands. Let me see you get up, Mr. Bankston.
“A. (Witness proceeded to get up out of witness chair)
"Q. Now, you have to use your—
“A. Well, that’s just it, until I can get that muscle to look like it will come up out of tension in the back of my legs well, I have got to use my hands as much as possible to support that weight. When I go all the way back like that it is just like a knife going through it. Now, they say I can stoop and all and lateral bend. I can go over. Now, when I get to that point I can go further but the pain just continues to increase to a point where you cannot keep going.
“Q. In other words, show me that again, the point where you reached, in other words, you can’t go any further than that, it will hurt you?
“A. Yes, sir, I tell you this, if I want my back to feel like it is going to bust I can stoop but it is just like a knife going into my back under pain.
“Q. You don’t do that unless you have to?
“A. Right, I avoid it at all times possible.
“Q. Let’s see you sit hack down.
“A. As I go back when I get to this area—
“Q. That’s when you have to use your hands?
“A. I have to support myself with my hands.”
Four rolls of motion picture film which were taken on May 25, 1962, and September 24, 1962, without plaintiff’s knowledge, showing him at work at his upholstery business and which were viewed by the Trial Court and ottrselves, belies the plaintiff’s testimony with respect to his alleged disability. These pictures show the plaintiff getting in and out of automobiles, bending, stooping, and carrying objects with no apparent difficulty whatever. These films, coupled with the preponderance of the medi *293 cal testimony lead us to the only conclusion that can be reached and that is that the plaintiff is not disabled as alleged.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.